IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re ) | |
| ) | Bk. No. 99-02261-PJW |
| HECHINGER INVESTMENT COMPANY ) | Chapter 11 |
| OF DELAWARE INC., et al., ) | |
| ) | |
| Debtors. ) | |
| ) | |
| UNIVERSAL FOREST PRODUCTS INC., ) | Civil Action Nos. 05-497, 05-498 (KAJ) |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | |
| ) | |
| HECHINGER INVESTMENT COMPANY ) | |
| OF DELAWARE INC., et al., ) | |
| ) | |
| Appellees and Cross- ) | |
| Appellants. | |

**MEMORANDUM ORDER**

**I.   INTRODUCTION**

Before me are two appeals brought by Universal Forest Products, Inc. ("UFP"), seeking reversal of (1) the June 16, 2005 Judgment of the bankruptcy court (the "Judgment") awarding $1,004,216 to Hechinger Liquidation Trust (the "Trust"), as successor in interest to Hechinger Investment Company of Delaware, Inc. ("Hechinger"), and (2) the October 8, 2004 Order of the bankruptcy court (the "Order") denying UFP's Motion in Limine concerning spoliation of evidence. Also before me is the Trust's cross-appeal of the Judgment, seeking reversal of the bankruptcy court's decision not to award prejudgment interest. For the reasons that follow, the Judgment and the Order will be affirmed.

## II. STANDARD OF REVIEW

This court has jurisdiction over appeals from the bankruptcy court pursuant to 28 U.S.C. § 158(a). On appeal, a clearly erroneous standard applies to the bankruptcy court's findings of fact and a plenary review standard to its legal conclusions. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). When reviewing mixed questions of law and fact, this court will accept the bankruptcy court's finding of "historical or narrative facts unless clearly erroneous, but [will] exercise plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts." *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 642 (3d Cir. 1991) (internal citations omitted).

A decision concerning sanctions for spoliation of evidence is reviewed for abuse of discretion. *See Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78 (3d Cir. 1994) (inquiring into whether a decision to exclude evidence because of spoliation "exceeded the appropriate bounds of [the court's] discretion"). Likewise, a decision whether to award prejudgment interest is reviewed for abuse of discretion. *Turner v. Davis, Gillenwater & Lynch (In re Inv. Bankers, Inc.)*, 4 F.3d 1556, 1566 (10th Cir. 1993); *Peltz v. Worldnet Corp. (In re USN Communications, Inc.)*, 280 B.R. 573, 602 (Bankr. D. Del. 2002).

## III. DISCUSSION

The background of this case has been set forth at length by the bankruptcy court. *Hechinger Liquidation Trust v. Universal Forest Prods. (In re Hechinger Inv. Co. of Del.)*, 326 B.R. 282, 284-87 (Bankr. D. Del. 2005). The case was brought to recover

2

transfers totaling $16,703,604.57 made by Hechinger to UFP during the 90-day preference period prior to Hechinger's June 11, 1999 bankruptcy filing. *Id.* at 284. Before trial, pursuant to the bankruptcy court's summary judgment decision and the parties' agreement, the amount at issue was reduced to $1,004,216.03. *Id.* at 284-85. The only issues remaining to be determined at trial were UFP's defenses that the transfers were a "contemporaneous exchange for new value" under 11 U.S.C. § 547(c)(1) and were made in the "ordinary course of business" under 11 U.S.C. § 547(c)(2). *Id.* at 285. The bankruptcy court determined that those defenses did not apply and ordered judgment for the Trust in the amount of $1,004,216.03. *Id.* at 287-94.

A.   *Contemporaneous Exchange for New Value*

The bankruptcy court determined that the § 547(c)(1) defense did not apply because the parties did not intend the transfers at issue to be a contemporaneous exchange for new value.[1] *Id.* at 288-89. In its appeal, UFP first argues that the bankruptcy court committed clear error in its determination of the facts underlying that decision, because the remittance advices prepared by Hechinger for those transfers establish that Hechinger had the requisite intent. (Docket Item ["D.I."] 8 at 10-14.) However, the bankruptcy court considered those advices along with the other evidence, and that court's conclusion about intent is not clearly erroneous.

---

[1] The § 547(c)(1) defense applies if a transfer was "(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and (B) in fact a substantially contemporaneous exchange." 11 U.S.C. § 547(c)(1).

3

The transfers in this case were made pursuant to an agreement between Hechinger and UFP whereby UFP sold lumber products to Hechinger subject to a credit limit of $500,000 or $1 million. *Hechinger*, 326 B.R. at 285-86. That agreement required Hechinger to make lump sum payments of $500,000 or $1 million by wire transfer to keep itself under the credit limit. *Id.* at 286. Remittance advices for those transfers were "delayed by two weeks or more after the payment." *Id.* at 287. Thus, while UFP contends that those advices show that Hechinger knew that it was making many payments in advance of, or nearly simultaneously with, shipment of products (D.I. 8 at 11-12), the bankruptcy court agreed with Hechinger that the combination of a credit limit with a high volume of orders may have resulted in some advance or simultaneous payment but that the parties intended a debtor-creditor relationship. *Hechinger*, 326 B.R. at 288-89. Thus, contrary to UFP's argument, the remittance advices fail to demonstrate that the bankruptcy court's conclusion was clearly erroneous.

UFP also argues (D.I. 8 at 14-19) that the bankruptcy court made an error of law when it stated that "[i]t is well established that the § 547(c)(1) defense may not be applied to credit transactions." *Hechinger*, 326 B.R. at 289. According to UFP, the court mistakenly concluded that credit payments can never be contemporaneous exchanges, and that legal error formed the basis for the court's conclusion that the § 547(c)(1) did not apply. (D.I. 8 at 18-19.) However, UFP misreads the court's statement. While a payment made on an antecedent debt may indeed be treated as contemporaneous under § 547(c)(1) if the parties so intended, *see, e.g., Silverman Consulting, Inc. v. Canfor Wood Prods. Mktg. (In re Payless Cashways, Inc.)*, 306 B.R.

243, 251 (B.A.P. 8th Cir. 2004), the court's statement was not to the contrary. Instead, the court was focused not on the mechanical timing of the payments, but on the parties' intent to form a credit, rather than cash, relationship. In the same paragraph as the statement challenged by UFP, the court concluded that "the nature of a credit relationship is inconsistent with the intent which is required in order to sustain the § 547(c)(1) defense." *Hechinger*, 326 B.R. at 289. Therefore, according to the bankruptcy court, the § 547(c)(1) defense fails because of the parties' intent, and that conclusion does not rest on a misstatement of the law.

Because UFP has failed to show that the court's conclusion under § 547(c)(1) was based on a clearly erroneous factual determination or on an error of law, I will affirm that conclusion.

B.   *Ordinary Course of Business*

The bankruptcy court determined that the § 547(c)(2) defense did not apply because the transfers were not made "in the ordinary course of business or financial affairs of the debtor and the transferee," 11 U.S.C. § 547(c)(2)(B), and were not made "according to ordinary business terms," 11 U.S.C. § 547(c)(2)(C). *Hechinger*, 326 B.R. at 289-94. According to UFP, those conclusions were clearly erroneous. (D.I. 8 at 19-30.) I disagree.

First, for the § 547(c)(2)(B) requirement, UFP argues that any transfer made within the terms of the parties' agreement is presumptively ordinary. (D.I. 8 at 20-22 (citing *Fitzpatrick v. Rockwood Water, Wastewater & Natural Gas Sys. (In re Tenn. Valley Steel Corp.)*, 201 B.R. 927 (Bankr. E.D. Tenn. 1996); *Trinkoff v. Porters Supply*

*Co. (In re Daedalean, Inc.)*, 193 B.R. 204 (Bankr. D. Md. 1996); *Ferrer v. Prusa Distribution Corp. (In re Kiddy Toys, Inc.)*, 178 B.R. 928 (Bankr. D.P.R. 1994).) Given that presumption, UFP asserts that the bankruptcy court committed clear error in concluding that the transfers were not made in the ordinary course of business. (D.I. 8 at 20-21.)

The bankruptcy court's conclusion was based on changes in the terms of the agreement between the parties, which went into effect approximately one month before the preference period began. *Hechinger*, 326 B.R. at 290-92. According to the court, the new terms, including a credit limit, a shorter time for repayment, and the requirement for lump sum wire transfers when Hechinger approached the credit limit, constituted "substantial restrictive changes" that were "so extreme, and so out of character with the long historical relationship between the parties, that [they] may only be characterized as preferential." *Id.* at 286-87, 292. Thus, the court's conclusion was based on the "extreme" change in terms imposed on Hechinger. *Id.* at 292. By arguing that accelerated payments within agreed-upon terms are presumptively in the ordinary course (D.I. 8 at 20-22), UFP fails to address the court's main conclusion that the imposition of new terms in this case moved the transfers outside of the ordinary course. UFP further argues that Hechinger was not forced to agree to those new terms (*id.* at 22-23) and that the shorter time for repayment did not significantly alter Hechinger's average repayment time (*id.* at 24), but those arguments again fail to address the court's concerns about the "extreme" change that the terms represented as a whole. Thus, UFP has failed to show that the court's conclusion was clearly erroneous.

For the § 547(c)(2)(C) requirement, UFP argues that the transfers were made according to ordinary business terms because, by falling within or nearly within the shortened eight-day repayment period, the transfers also fell within the thirty-day terms that were in place before the agreement was changed. (*Id.* at 27-30.) Again, UFP focuses only on the time period for repayment, which it contends was not radically changed by the new terms. However, the court concluded that the transfers were not made according to ordinary business terms, because the imposition of a credit limit and an eight-day repayment period were not normal practice in UFP's relationships with large retail customers like Hechinger. *Hechinger*, 326 B.R. at 293-94. By focusing on the time window in which payments were made, UFP has failed to show that the court's conclusion regarding the new terms was clearly erroneous.

Therefore, UFP has failed to show that the court's conclusion under § 547(c)(2) was based on a clearly erroneous factual determination, and I will affirm that conclusion.

C.  *Prejudgment Interest*

In its Memorandum Opinion, the bankruptcy court, "in its discretion, decline[d] to award pre-judgment interest to [the Trust]." *Id.* at 294. The Trust has cross-appealed that decision, arguing that the bankruptcy court was required to express the findings of fact supporting its discretionary decision not to award prejudgment interest. (D.I. 9 at 10-12.)

The Trust has cited no case, and I find none, requiring express findings of fact to support a discretionary decision by the bankruptcy court in this regard. Indeed, when the court's reasoning is clear from the record, appellate review based on that record

7

appears to be the proper course. *See County Banking & Trust Co. v. Kempner (In re Kempner)*, 152 B.R. 37, 41 (D.Del. 1993) (holding that findings of fact were not necessary to support a motion to dismiss and that "the Bankruptcy Court's statements on the record sufficiently explain the rationale for denying [the motion] so as to provide meaningful appellate review of the Bankruptcy Court's order"); *cf. Vadino v. A. Valey Eng'rs*, 903 F.2d 253, 258 (3d Cir. 1990) (noting that there are "cases where the reason for summary judgment is apparent on the record because, for example, only one ground was given for the motion").

Here, the court was presented with one argument from UFP in opposition to an award of prejudgment interest: the court may, within its discretion, deny prejudgment interest if the defendant has a good faith defense to the preference claim. (Bankr. Adv. No. 01-3170, D.I. 106 at 19-20 (citing, *inter alia*, *Peltz v. Worldnet Corp. (In re USN Communications, Inc.)*, 280 B.R. 573, 602-03 (Bankr. D. Del. 2002); *Sacred Heart Hosp. v. E.B. O'Reilly Servicing Corp. (In re Sacred Heart Hosp.)*, 200 B.R. 114, 119 (Bankr. E.D. Pa. 1996)).) According to UFP, it presented a credible defense. (Bankr. Adv. No. 01-3170, D.I. 106 at 20.) Indeed, of the original $16 million sought, only about $1 million remained at issue by the time of the trial, due in part to UFP's defenses. *Hechinger*, 326 B.R. at 284-85. Therefore, the Trust has failed to show that the court abused its discretion, and the denial of prejudgment interest will be affirmed.

D.   *Spoliation*

In its October 8, 2004 Order, the bankruptcy court denied UFP's Motion in Limine #1 (Bankr. Adv. No. 01-3170, D.I. 68), which sought an adverse inference on

8

Hechinger's intent concerning payments made in advance and contemporaneous exchanges, stemming from alleged spoliation of evidence by Hechinger. UFP now appeals from that Order, asserting that the evidence showed that Hechinger had a duty to preserve documents concerning its relationship with UFP and that the destruction of documents warranted, at least, an adverse inference against Hechinger on the issue of its intent under § 547(c)(1). (D.I. 8 at 30-36.) UFP also complains that the court failed to provide any "opinion or analysis" to support its denial of UFP's motion. (*Id.* at 33.)

Again, the reasoning behind the court's decision may be discerned from the record. The parties agreed that documents were destroyed by Hechinger; the dispute centered on Hechinger's intent (Bankr. Adv. No. 01-3170, D.I. 72 at 9-11), and on the availability of alternative sources for the same evidence (*id.* at 12). The court was presented with the arguments that documents were destroyed as a routine part of Hechinger's downsizing (*id.* at 8), and that the relevant information about the transfers was available from UFP's own records (*id.*). Considering that record, UFP has failed to show that the court's decision not to apply an adverse inference was an abuse of discretion. Therefore, the October 8, 2004 Order will be affirmed.

IV.  **CONCLUSION**

Accordingly, it is hereby ORDERED that the October 8, 2004 Order and the June 16, 2005 Judgment of the Bankruptcy Court are AFFIRMED.

UNITED STATES DISTRICT JUDGE

March 16, 2006
Wilmington, Delaware